1

2

3

4

5

6

7

8                          **IN THE UNITED STATES DISTRICT COURT**

9                          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   SEQUOIA FORESTKEEPER AND                    CASE NO. CV F 07-1690 LJO DLB
     EARTH ISLAND INSTITUTE,
12                                               **ORDER ON DEFENDANT'S RENEWED**
                                                 **MOTION TO DISMISS AND PLAINTIFFS'**
13                                               **MOTION TO STRIKE CONTRACT**
                                                 (Docs.99, 100)
14                          Plaintiffs,          _____

15         vs.

16   UNITED STATES FOREST SERVICE,
     et al.,
17                          Defendants.

18   _____/

19                                    **INTRODUCTION**

20         Plaintiffs Sequoia Forestkeeper and Earth Island Institute (collectively "Earth Island") initiated

21   this action to seek judicial review of Defendant United States Forest Service's ("Forest Service's")[1]

22   development and approval of the Clear Creek Forest Health Improvement and Fuels Reduction Project

23   ("Clear Creek Project") pursuant to the Administrative Procedures Act, 5 U.S.C. §706(2)(A) ("APA").

24   Earth Island claims that the Clear Creek Project fails to conform with the National Environmental Policy

25   Act ("NEPA") and the National Forest Management Act ("NFMA") because the Forest Service: (1)

26   failed to comply with the Sierra Nevada Forest Plan Amendment monitoring requirements for

27   _____

28   [1]Defendants are the  United States Forest Service, Tina Terrell, in her official capacity as Forest Supervisor for the
     Sequoia National Forest ("Ms. Terrell"), and Abigail R Kimbell, in her official capacity as Chief of the United States Forest
     Service (collectively "Forest Service").

                                              1

1   Management Indicator Species and Species At Risk (count 1); (2) conducted an inadequate and

2   insufficient environmental analysis, including a failure to prepare an Environmental Impact Statement

3   ("EIS") and failure to take a "hard look" at various conditions (counts 2-6); and (3) failed to comply with

4   hazard tree guidelines (count 7).

5          While this action was pending, two events occurred to impact this litigation. First, the Forest

6   Service withdrew the challenged administrative action–the Clear Creek Project. Second, a forest fire

7   burned through a sizeable portion of the Clear Creek Project area. Based on these changed

8   circumstances, Earth Island shifted it focus to attack the Clear Creek timber sale contract between the

9   Forest Service and Intervenor Defendant Sierra Forest Products ("SFP"). The Forest Service maintains

10  that this action should be dismissed based on the circumstances.

11         By memorandum filed on October 17, 2008, Earth Island moves this Court to set aside the Clear

12  Creek timber sale contract and to enter judgment in its favor on Counts 1, 2, 3, and 7 of the complaint.[2]

13  By notice filed on October 17, 2008, the Forest Service moves to dismiss this action in full. The Forest

14  Service argues that Earth Island's claims as to the Clear Creek Project are moot, Earth Island's claims

15  regarding the Clear Creek timber sale contract are not ripe, and Earth Island lacks standing to pursue the

16  timber sale contract claims. The Forest Service and SFP opposed Earth Island's motion to strike the

17  timber sale contract. Earth Island opposed the Forest Service's motion to dismiss. Having considered

18  all arguments and documents in support and opposition to the pending motions, and for the following

19  reasons this Court DISMISSES this action.

20                                        **BACKGROUND**

21         The Clear Creek Project area is approximately 4,510 acres, located on the west side of the Piute

22  Mountains within the Kern River Ranger District of the Sequoia National Forest, in Kern County,

23  California. The Forest Service promoted the Clear Creek Project as a thinning project to reduce the

24  potential for high severity fire and prolonged insect- and disease-related tree mortality in the Clear Creek

25  area. To implement the project, the Forest Service would cut and remove live trees up to 29.9" diameter

26  at breast-height ("dbh"), and remove standing dead trees ("snags") and roadside "hazard" trees. Earth

27

28         [2]Earth Island no longer pursues Counts 4, 5, and 6 of the November 20, 2007 complaint. Accordingly, this Court
    DISMISSES these abandoned claims.

1  Island claims, *inter alia*, that the Clear Creek Project would degrade, and render unsuitable, hundreds

2  of acres of high quality California spotted owl habitat in an area of concern.

3       On January 31, 2008, the Forest Service approved the Clear Creek Project Decision Notice

4  ("DN") and Finding of No Significant Impact ("FONSI"), based on the Clear Creek Project

5  Environmental Assessment ("EA") of January 30, 2007.  Earth Island's administrative appeals of the

6  Clear Creek Project were denied on May 4, 2007 and May 7, 2007.  Thereafter, on November 20, 2007,

7  Earth Island initiated the instant action.  This Court set a briefing schedule for the parties' cross-motions

8  for summary judgment.  The motions were scheduled to be heard on April 11, 2008.

9                          **Withdrawal of Clear Creek Project DN and FONSI**

10      On March 25, 2008, Ms. Terrell sent the following letter to the Regional Forester: "I have

11  decided to withdraw the Clear Creek ...Project [DN and FONSI] dated January 31, 2007.  No activities

12  implementing the Clear Creek Project will be undertaken unless and until further NEPA documentation

13  is prepared and a new decision is issued."  Because the challenged decision was withdraw, the

14  proceedings were stayed temporarily to allow the parties to brief whether this action should be dismissed

15  as moot.  In its Order on Mootness, filed on April 23, 2008  ("Mootness Order"), this Court ruled that

16  jurisdiction continued to exist.  The Court found that the voluntary cessation exception to the mootness

17  doctrine applied, based in part on Ms. Terrell's statement that, after supplemental analysis, she may re-

18  approve the project as originally designed.

19      The Forest Service published a Legal Notice for Comment ("Legal Notice") on the Preliminary

20  Revised Environmental Assessment ("Preliminary Revised EA") for the Clear Creek Project on April

21  30, 2008.  The Preliminary Revised EA "clarifie[d] the documentation of the proposed action, issues,

22  alternatives and the subsequent effects analysis from the original EA."  Preliminary Revised EA, 1.

23  "Specifically, clarifications were made regarding the acres of treatment based on the most recent

24  mapping, and the size of tree allowed for commercial timer harvest or other removal within each action

25  alternative." *Id*.  The  original 4,510-acre estimate increased to a revised estimate of 4,515 acres.  "In

26  addition, several of the specialist reports in the project record [were] revised to better display the

27  potential effects of each alternative carried forward through detailed study." *Id*.  The 30-day public

28  comment period for the Preliminary Revised EA was to expire on May 30, 2008.

1    Because a Preliminary Revised EA was under review, the Forest Service moved this Court to

2    reconsider its Mootness Order.  In its May 21, 2008 Order on Defendants' Motion for Reconsideration

3    ("Reconsideration Order"), this Court reasoned that "[a]lthough the Forest Service initiated the process

4    to issue a revised DN, there is no assurance that the challenged action will not again take place," since

5    the Forest Service indicated that its preferred alternative course of action was nearly identical to the

6    challenged Clear Creek Project.  Reconsideration Order, 4-5 (internal citations and quotations omitted).

7    Thus, although new circumstances arose, the voluntary cessation exception continued to apply. *Id*. at 5.

8    Nevertheless, the Court stayed the proceedings to allow the Forest Service to consider public comments

9    and develop a final revised EA.

10                    **Suspension of the Timber Sale Contract**

11   On December 4, 2007, the Forest Service awarded SFP a timber sale contract covering the Clear

12   Creek Project area.  The Clear Creek Timber Sale contract is the June 2006 version of form FS-2400-6,

13   which sets forth the standard provisions of a timber sale contract that the Forest Service uses throughout

14   the country.  "[T]he Forest Service uses standard contracts for all large, complex sales of timber from

15   National Forest System lands...these instruments are comprehensive in scope and are designed to fully

16   set forth the respective rights and obligations of the Forest Service and the timber Purchaser." 71 Fed.

17   Reg. 43096-97 (July 31, 2006).

18        The timber sale contract provides that the Forest Service may, by written order, delay or interrupt

19   operations authorized under the contract to ensure consistency with NEPA and to conduct environmental

20   analysis.  Specifically, provision B8.33 of the contract reads:

21        (a)    Contracting Officer may, by written order, delay or interrupt authorized
                 operations under this contract or, notwithstanding B8.3, modify this contract, in
22               whole or in part:
                 (I)    To prevent environmental degradation or resource damage, including but
23                      not limited to harm to habitat, plants, animals, cultural resources, or cave
                        resources;
24               (ii)   To ensure consistency with land and resource management plans or other
                        documents prepared pursuant to the National Environmental Policy Act
25                      of 1969, 42 USC 4321-4347;
                 (iii)  To conduct environmental analysis, including, but not limited to,
26                      engaging in consultation pursuant to the Endangered Species Act of 1973,
                        16 USC 1531 et seq.
27

28   Timber Sale Contract, B8.33(a).  In addition, the Forest Service may "unilaterally terminate [the timber

4

1  sale] contract, for any of the reasons set forth in paragraph (a) of B8.33.

2      In addition to withdrawing the original Clear Creek Project DN and FONSI, and in accordance

3  with the contract terms, the Forest Service suspended the timber sale contract it awarded to SFP.  An

4  April 2, 2008 letter from the Forest Service to SFP reads,

5          On March 25, Forest Supervisor, Tina Terrell, withdrew the [DN and FONSI] for
        the Clear Creek [EA].   Reference is made to B8.33 Contract Suspension and
6        Modification, which states in part that the Contracting Officer may, by written order,
        delay or interrupt authorized operations under this contract.  I am hereby suspending your
7        harvest operations until further environmental documentation is prepared and a new
        decision is issued.
8

9  The Clear Creek timber sale contract remains suspended.

10                                **Piute Fire**

11      In late June 2008, the Piute Fire, one of approximately 1,000 wildfires burning in California at

12  that time, ignited in the Southern Sierra Nevada mountain range area.  The 37,000-acre Piute Fire burned

13  approximately one third of the Clear Creek Project area.  According to Ms. Terrell, the Piute Fire burned

14  approximately 1,700 acres within the 4,500-acre Clear Creek Project area.  Fourth Terrell Declaration,

15  ¶5.  Of the 1,700 acres affected, 1,175 acres burned at high or moderate soil burn severity levels, while

16  approximately 633 acres burned at low soil burn severity levels. *Id*.  According to Earth Island, the Piute

17  Fire burned over two-thirds of the designated sale units (which, Earth Island recognizes, is the only

18  portion of the project challenged in this action).

19                           **Post-fire Proceedings**

20      By joint status report, the Forest Service indicated that it would renew its motion to dismiss this

21  action as moot, based on its withdrawal of the Clear Creek Project and changes in the Clear Creek

22  Project area caused by the Piute Fire.  Earth Island asserted its intention to challenge the continued

23  existence of the timber sale contract between the Forest Service and SFP.  The Court set a briefing

24  schedule for the motions currently under submission.  The Court reviewed Earth Island's opening,

25  opposition, and reply briefs, the Forest Service's opening, opposition, and reply briefs, and SFP's

26  opposition and reply briefs, including the declarations and supporting documents contained therein.  The

27  Court found this motion suitable for a decision without a hearing, vacated the November 17, 2008

28  hearing date, and issues the following order.

1
## DISCUSSION

2
### Standards of Review

3   As a threshold matter, this Court considers the jurisdictional issues raised by the Forest Service.

4   As a court of limited jurisdiction, this Court must consider whether jurisdiction exists pursuant to Article

5   III of the United States Constitution, and dismiss an action if jurisdiction is lacking. *Southern Pacific*

6   *Transportation Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990), *cert. denied*, 112 S. Ct.

7   382 (1991); *see also*, Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-

8   matter jurisdiction, the court must dismiss the action.").  This Court's Article III jurisdiction over a case

9   "depends on the existence of a 'case or controversy.'" *GTE California, Inc. v Federal Communications*

10  *Commission*, 39 F.3d 940, 945 (9th Cir. 1994).  "To enforce Article III's limitation of federal jurisdiction

11  to 'cases and controversies, Plaintiffs must demonstrate both standing and ripeness." *Nelson v. National*

12  *Aeronautics and Space Admin*., 530 F. 3d 865, 873 (9th Cir. 2008).  In addition, Earth Island must also

13  demonstrate that its claims are not moot.  *Friends of the Earth, Inc. v. Laidlaw,* 528 U.S.167, 189 (2000).

14
### Mootness

15  A case is considered moot if, at some time during the litigation process, the controversy posed

16  by the plaintiffs' complaint is no longer "live."  *Laidlaw,* 528 U.S. at 189.  "A case becomes moot

17  whenever it 'los[es] its character as a present, live controversy of the kind that must exist if we are to

18  avoid advisory opinions on abstract propositions of law.'" *Cantrell v. City of Long Beach*, 241 F.3d 674,

19  678 (9th Cir. 2001) (quoting *Hall v. Beals,* 396 U.S. 45, 48 (1969)).  "This means that...the plaintiff

20  'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be

21  redressed by a favorable judicial decision.'" *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  When mootness

22  is based upon a "defendant's voluntary cessation of a challenged practice, however, federal courts may

23  continue to exercise jurisdiction over the matter." *Laidlaw*, 528 U.S. at 189.  "The heavy burden of

24  persuading the court that the challenged conduct cannot reasonably expected to start up against lies with

25  the party asserting mootness." *Id.*  A defendant may overcome this heavy burden by establishing that

26  "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."

27  *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (internal quotations and citations omitted).

28  ///

6

1

**Ripeness**

2          The ripeness doctrine serves "to prevent the courts, through avoidance of premature adjudication,

3    from entangling themselves in abstract disagreements over administrative policies" and requires

4    assessing "both the fitness of the issues for judicial decision and the hardship to the parties of

5    withholding court consideration." *Abbott Labs. v. Garner*, 387 U.S. 136, 148-49 (1967) (quoted in *Ass'n*

6    *of Am. Med. Colleges v. United States*, 217 F.3d 770, 779-80 (9th Cir. 2000)).  "Ripeness is a prudential

7    doctrine intended, in part, to prevent judicial review of legal issues outside the limits of Article III cases

8    and controversies." *Earth Island v. Ruthebeck*, 490 F.3d 687, 694 (2008).

9

**Clear Creek Project Claims**

10          In its Mootness Order, this Court ruled: "Withdrawal of the Clear Creek Project, without more,

11   is insufficient to satisfy the heavy burden of establishing that the allegedly wrongful conduct will not

12   recur.*" Id.* at 4 (citing *U.S. v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)).  This

13   Court noted that "[e]nvironmental cases may become moot after the withdrawal of the project when

14   external factors make an expectation of recurrence unreasonable." Mootness Order at 4.  As discussed

15   below, the Court disagrees with Earth Island's claim that "neither Defendants representations nor the

16   effects of the Piute Fire are so significant as to prevent implementation of the project as envisioned in

17   the Timber Sale Contract."  For the following reasons, Earth Island's claims are moot.

18          The Piute Fire, which damaged a portion of the Clear Creek area, presents an external factor that

19   makes a continued expectation of recurrence unreasonable.  In support of the renewed motion to dismiss,

20   Ms. Terrell declares the following:

21               Since my decision to withdraw the Clear Creek Project decision, the Piute Fire
             burned approximately 37,000 acres on [sic] the Sequoia National Forest, including a third
22           of the Clear Creek Project Area.  As a result, the Clear Creek Environmental Assessment
             (EA) no longer provides a current or completely accurate evaluation of conditions on the
23           ground in the Project Area.  In addition, the changed conditions caused by the fire *make
             it impossible to conduct many of the project activities* that were originally planned for the
24           Clear Creek Area.  As a result, *the Forest Service will definitively not be reissuing the
             Clear Creek Project EA and decision.*

25

26   Fourth Terrell Declaration, ¶3 (emphasis added).  Based on Ms. Terrell's statements, the Forest Service

27

28

7

abandons the Clear Creek Project in the form challenged in this action.[3]  Ms. Terrell explains that the Clear Creek Project is no longer necessary because, "[i]n areas of low tree mortality, the Clear Creek Project's original objectives for reducing surface and ladder fuels has been met by the burning experienced by the Piute Fire and further treatments in those areas may no longer be necessary." Fourth Terrell Declaration, ¶5.  Future action, if any, will be developed to meet different forest health needs caused by the fire and would cover a different geographic area.  Rather than a fuels reduction project, such as the Clear Creek Project, limited to the Clear Creek area, "any new proposals would encompass forest health, recovery and restoration efforts and/or hazard tree abatement efforts focused on the larger Piute Mountain area, including the Piute Fire area."[4]  Fourth Terrell Declaration, ¶4.  Thus, "any new proposal for action would require development of a new purpose and need to reflect the changed circumstances that exist as a result of the Piute Fire." *Id.*

Based on the effects of the Piute Fire on the Clear Creek Project area, the withdrawal of the Clear Creek Project, and the statements made in Ms. Terrell's declaration, the Forest Service establishes that the allegedly wrongful conduct–execution of the Clear Creek Project in a form nearly identical to that which was approved on January 30, 2007 and challenged in this action–will not recur.  Earth Island's claims related to the Clear Creek Project are moot because "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw,* 528 U.S. at 189; *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968)).  Additionally, because the Clear Creek Project will not re-issue in a form similar to the challenged action, this Court is not in a position to provide meaningful relief to Earth Island based on its claims.  *Northwest Envtl. Def. Ct. v. Gordon*, 849 F.2d at 1244; *see also, Forest Service Employees for Environmental Ethics v. United States Forest Service*, 408 F.Supp.2d.916 (N.D. Cal. 2006).  Accordingly, this Court dismisses as moot all claims related to the Clear Creek Project.

---

[3]Ms. Terrell's statements are afforded significant weight, as they are binding judicial admissions. *Gospel Missions of America v. City of Los Angeles*, 328 F.3d 548 (9th Cir. 2003); *In re Crystal Properties, Ltd., L.P.*, 268 F.3d 743 (9th Cir. 2001).

[4]Earth Island challenges Ms. Terrell's opinions about the benefits of forest restoration.  Earth Island will have the opportunity to share these opinions with the Forest Service when, and if, the Forest Service develops a forest restoration plan in the future, during the appropriate comment period.

**<u>Timber Sale Contract Claims</u>**

Although Earth Island attacks the maintenance of the timber sale contract in the instant motion, Earth Island stated no claim against the contract in the complaint.  Earth Island's complaint focuses exclusively on the Clear Creek Project EA, DN and FONSI, and faults the Forest Service for allegedly: (1) failing to comply with the Sierra Nevada Forest Plan Amendment monitoring requirements for Management Indicator Species and Species At Risk (count 1); (2) conducting an inadequate and insufficient environmental analysis, including a failure to prepare an EIS and failure to take a "hard look" at various conditions (counts 2-6); and (3) failing to comply with hazard tree guidelines (count 7). In its opening memorandum, Earth Island moves to strike the contract and "implore[s] the Court to enter judgment for Plaintiffs on Claims 1, 2, 3, and 7;" however, Earth Island never addresses the substance of those enumerated claims its argument.  Earth Island fails to explain how its current timber sale contract relates to the claims stated in its complaint.  Earth Island acknowledges that it has arrived at its current challenged through a "circuitous route."  The Forest Service correctly points out that Earth Island fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 8 (a).

While Earth Island's challenge to the timber sale contract is untethered to the claims of the complaint, this Court will consider the merits of Earth Island's arguments in the interest of preserving scarce judicial resources. *See Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (leave to amend should be granted, even if no request is made, unless amendment would be futile).

Earth Island argues that the "present circumstance in this case involves the existence of an executed timber sale contract which requires logging activities to be performed in a specified area of the Sequoia National Forest by a third party contractor–a contract which is not connected to any environmental analysis required by... NEPA."  Earth Island contends that the maintenance of the suspended timber sale contract demonstrates a premature and irretrievable commitment of resources by the Forest Service, in violation of NEPA.  Earth Island maintains that the only appropriate remedy is termination of the Clear Creek timber sale contract.  As described more fully below, neither NEPA nor this Court's equitable powers compels termination of the timber sale contract.  The maintenance of the suspended Clear Creek timber sale project does not commit resources irretrievably.  In addition, Earth Island's claims are not ripe.

**No Irretrievable Commitment of Resources**

Under NEPA, an agency must prepare a detailed analysis of the environmental impacts and adverse environmental effects of a proposed action. 42 U.S.C. §4332(2)(C). NEPA regulations mandate that an environmental impact statement be commenced "as close as possible to the time the agency is developing or is presented with a proposal." 40 C.F.R. §1502.5. An EA must be "prepared early enough so it can serve practically as an important contribution to the decisionmaking process and will not be used to rationalize or justify decisions already made." *Id.* In addition, NEPA requires an EIS to include a statement of "any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented." 42 U.S.C. §4332(C)(v). Accordingly, an EIS must be prepared before "any irreversible and irretrievable commitment of resources." *Conner v. Burford*, 848 F.2d 1441, 1446 (9th Cir. 1988).

An irreversible commitment of resources is not made unless "the government fails to preserve the absolute right to prevent the use of the resources in question." *WildWest Institute v. Bull*, 468 F. Supp.2d 1234, 1244 (D. Mont. 2006) (citing *Friends of the Southeast Future v. Morrison*, 153 F.3d 1059, 1063 (9th Cir. 1998)). Under the timber sale contract, the Forest Service has the authority to modify or terminate the contract to ensure consistency with documents prepared under NEPA. Timber Sale Contract, B8.33 and B8.34; *see also*, 36 C.F.R. §§223.40, 223.11, 223.116. The Forest Service is not compelled to implement the contract as it was awarded and has full authority to suspend, modify, or cancel the contract following further environmental review and NEPA analysis. *C.f., Metcalf v. Daley*, 214 F.3d 1135, 1144 (9th Cir. 2000) (irretrievable commitment of resources where contract makes no reference to NEPA and amounted to a "surrender of the Government's right to prevent activity in the relevant area."). Thus, the suspended timber sale contract does not require logging activities, as Earth Island argues, and does not commit resources irretrievably.

Moreover, cases presented with this question "have focused on the commitment of *natural* resources, not necessarily the agency's financial resources." *WildWest Institute v. United States Forest Service*, 2008 DJDAR 16654, 16656 (9th Cir. Nov. 7, 2008) (emphasis in original) (holding that "the Forest Service's premarking of [hazard] trees did not irretrievably commit it to a particular course of action" notwithstanding the fact that the Forest Service had expended over $200,000 to mark the trees).

10

1    Here, as in *WildWest*,"[a]lthough the Forest Service undertook preparatory actions in favor of logging,

2    it clearly retained the authority to change course or to alter the plan it was considering implementing."

3    *WildWest Institute*, 2008 DJDAR at 16656.  As a result, maintenance of the suspended timber sale

4    contract does not violate this provision of NEPA, as it is not "an irreversible and irretrievable

5    commitment of federal forest land to surface-disturbing...activities that could have a significant impact

6    on the environment." *Conner*, 848 F.2d at 1446.

7                                    **Contract Claims are Not Ripe**

8           The Forest Service argues that Earth Island's attack on the timber sale contract is not ripe.

9    "[I]njunctive and declaratory judgment remedies are discretionary, and courts traditionally have been

10   reluctant to apply them to administrative determinations unless they arise in the context of a controversy

11   'ripe' for judicial resolution." *Ass'n of Am. Med. Colleges*, 217 F.3d at 779 (citation omitted).  The

12   ripeness doctrine serves to "prevent the courts, through avoidance of premature judicial review of

13   administrative actions, from entangling themselves in abstract disagreements over administrative

14   policies, and also to protect the agencies from judicial interference until an administrative decision has

15   been formalized and its effects felt in a concrete way." *Pacific Gas & Elec. Co. v. Energy Resources*

16   *Conservation and Dev. Comm'n,* 461 U.S. 190, 200 (1983) (quoting *Abbott Labs.*, 387 U.S. at 148-49

17   (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977)); *see also, Ash Creek*

18   *Mining v. Lujan*, 934 F.2d 240, 243 (10th Cir. 1991).

19          To determine whether Earth Island's claims are ripe, this Court must assess "both the fitness of

20   the issues for judicial decision and the hardship to the parties of withholding court consideration."

21   *Nelson v. NASA*, 530 F.3d 865, 873 (9th Cir. 2008) (quoting *Ass'n of Am. Med. Colleges*, 217 F.3d at

22   779-80).  In assessing these prudential ripeness requirements in an environmental case, the Court

23   considers: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial

24   intervention would inappropriately interfere with further administrative action; and (3) whether the

25   courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n v.*

26   *Sierra Club*, 523 U.S. 726, 733 (1998).  The Court addresses each component below.

27          First, delay of Earth Island's pre-enforcement challenge of the timber sale contract would not

28   cause a "hardship" to Earth Island, as the United States Supreme Court "has come to use that term."

1   *Ohio Forestry*, 523 U.S. at 733.   Earth Island's concerns that the timber sale contract "authorizes" or

2   requires logging, "could move ahead unchallenged," and "proceeds in the absence of necessary

3   [analysis]" are unfounded.   Maintenance of the suspended timber sale contract "does not give anyone

4   a legal right to cut trees, nor does it abolish anyone's legal authority to object to tress' being cut." 523

5   U.S. at 733.   As the *Ohio Forestry* court explained:

6           [B]efore the Forest Service can permit logging, it must focus on a particular site, propose
           a specific harvesting method, prepare an environmental review, permit the public an

7           opportunity to be heard, and [if challenged] justify the proposal in court.  The [plaintiffs]
           thus will have ample opportunity later to bring its legal challenge at a time when harm

8           is more imminent and more certain.  Any such later challenge might also include the
           lawfulness of the present [challenged action] if (but only if) the present [action] then

9           matters, *i.e.*, if the [action] plays a causal role with respect to the future, then-imminent,
           harm from logging.  Here, we do not find a strong reason why the [plaintiffs] must bring

10          its challenge now in order to get relief.

11   523 U.S. at 733-34 (internal citations omitted).   The timber sale contract is not ripe for review because

12   it is not the "*consummation* of [an] administrative process." *Chicago & S. Air Lines, Inc. v. Waterman*

13   *S.S. Corp.*, 333 U.S. 103, 113 (1948)(emphasis added). Both parties agree that further agency action is

14   required before the contract is enforceable.   The Forest Service commits that any future activities will

15   be subject to a new determination of purpose and need, new scoping, and new environmental analysis.

16   Both parties agree that any new decision will be subject to notice, comment, and administrative appeal.

17   *See* Fourth Terrell Declaration, ¶6.  In addition, for the timber sale contract to be used in connection with

18   any new project, the contract must be modified in accordance with the NEPA decision, if any.   To

19   modify the contract, the Forest Service must formally lift the suspension.   Earth Island acknowledges

20   that the "Forest Service has made it clear that any new NEPA analysis, which may or may not be done

21   in the future, will begin from scratch and will not be supplemental to any previous environmental

22   analysis."   Despite Earth Island's assertion that the Forest Service will not comply with NEPA, this

23   Court "cannot assume that government agencies will not comply with their NEPA obligations in later

24   stages of development." *Conner*, 848 F.2d at 1447.  The Court affords the Forest Service a presumption

25   of regularity and that it will comply with the law. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S.

26   402, 415 (1971).   Therefore, no ground-disturbing activities will take place without further

27   environmental analysis and process.

28          The Court further notes that the suspended timber sale contract inflicts no significant "practical

harm" on Earth Island's interests. *Ohio Forestry*, 523 U.S. 733-34.  When an agency contract precedes the development of an environmental analysis, courts consistently rule that the proper remedy is to require new analysis.[5]  *See e.g., Metcalf v. Daley*, 214 F.3d 1135, 1146 (9th Cir.2000) (concluded that the agency had prepared the EA too late, after it had already committed itself contractually to the proposal it was analyzing, and ordered the agency to prepare a new EA under circumstances that ensured an objective evaluation); *Save the Yaak Committee v. Block*, 840 F.2d 714, 722 (9th Cir. 1988) (concluded that the untimely preparation of the EAs meant that the Forest Service failed to take a "hard look" at the environmental consequences of its actions, enjoined the road reconstruction and related timber sales, and remanded the case to the agency for further analysis-despite the existence and partial execution of the existing contracts); *Oregon Natural Resources Council Action v. U.S. Forest Service*, 445 F.Supp.2d 1211 (D. Or. 2006) (concluded that remand to administrative agency to prepare supplemental EA was proper remedy).  At present, Earth Island's interests are protected because the timber sale contract is suspended and cannot be enforced absent NEPA compliance.[6]  Uniquely, the Forest Service admits it must comply with NEPA before the contract is enforceable and commits to provide new analysis.  Forest Service's Opposition at p. 3 and n.1.  The challenge to the suspended timber sale contract is unripe, because the contract poses no direct and immediate effect on Earth Island and immediate compliance with the terms of the contract are not required. *Ass'n of Am. Med. Colleges*, 217 F.3d at 780.  Thus, Earth Island will suffer no immediate practical harm.

Next, further factual development of the issues would assist the court in a future review of Earth Island's claims, if any.  At this time, it is unclear what timber would be affected under a modified timber sale contract, what environmental decisions the Forest Service will make, if at all, and what impacts any

[5]Earth Island cites to no case in which a court ruled that cancellation of a contract was the proper remedy.

[6]Despite Earth Island's claims, and this Court's previous erroneous conclusion, NEPA compliance is required for all provisions of the withdrawn Clear Creek Project timber sale contract, including hazard tree removal. *Earth Island v. Ruthenbeck*, 490 F.3d 687, 698 (9th Cir. 2007) (invalidating Forest Service regulations that created categorical exclusions to notice and appeal requirements); *Earth Island v. Penguilly*, 376 F. Supp. 2d 994 (E.D. Cal. 2005) (same); Memo from Dale Bosworth to Regional Foresters, dated October 20, 2005 (instructing recipients that even "categorically excluded timber sales...are subject to notice, comment, and appeal); Letters from United States Department of Agriculture Inspector General Phyllis K. Fong to Congressman Maurice D. Hinchey, Congressman James P. Moran, and Congressman John W. Olver, dated August 7, 2008 (noting that subsequent to former hazard tree action without review, the above-cited cases invalidated the regulations relied upon by the Forest Service).

1   future decision might have.  This action is unfit for judicial decision, because "pending administrative

2   proceedings or further agency action might render the case moot and judicial review completely

3   unnecessary."*Sierra Club v. Nuclear Regulatory Comm'n,* 825 F.2d 1356, 1362 (9th Cir. 1987).  Earth

4   Island's challenge to the timber sale contract pursuant to the APA will be ripe when the "scope of the

5   controversy has been reduced to more manageable proportions, and its factual components fleshed out,

6   by some concrete action applying the [action] to the claimant's situation in a fashion that harms or

7   threatens to harm him." *Lujan,* 497 U.S. at 891.  Earth Island's abstract attack on administrative policy,

8   rather than a concrete action that threatens immediate harm, renders this action unripe.  *Pacific Gas &*

9   *Elec. Co.,* 461 U.S. at 200.

10       Moreover, future environmental analysis, if any, will determine which law is applicable to Earth

11   Island's claims.  While this action was pending, the law applicable to the Clear Creek Project was

12   challenged and has changed.  In *Sierra Forest Legacy v. Rey,* 2:05-cv-205-MCE-GGH (E.D. Cal. Aug.

13   1, 2008), for example, the court held that the 2004 Framework violated NEPA.  Thus, it is unclear which

14   Forest Plan would be applicable to any future EA and/or challenge presented by Earth Island.  In

15   addition, a 2007 MIS Amendment to the 2004 Framework, which passed after the initial Clear Creek

16   Project was approved, affects the monitoring requirements challenged in this action by Earth Island.

17   Earth Island is currently involved in litigation to question the validity of the 2007 MIS Amendment.

18   *Sierra Forest Legacy v. U.S. Forest Service,* No. 08-4204 (N.D. Cal. Sept. 9, 2008).[7]  Because it is

19   unclear what legal standards would be in effect for any decision the timber sale contract would

20   implement, if at all, in the future, a current review of the suspended timber sale contract would be an

21   unnecessary waste of limited judicial resources, *Ohio Forestry,* 523 U.S. at 736, and would require this

22   Court to consider improperly "abstract questions of law."*Earth Island v. Ruthebeck,* 490 F.3d at 694.

23       Finally, judicial intervention at this time would interfere inappropriately with the administrative

24   process.  "The prospect of pervasive oversight by federal courts over the manner...of agency compliance

25   with...congressional directives is not contemplated by the APA." *Norton v. SUWA,* 542 U.S. 55, 67

26

27       [7]Earth Island's comment in its Reply, p.8 n.8 about another named judge's reversals is insulting to this Court.  Each

28   individual judge has an independent duty to decide matters before that judge based upon appropriate facts, reason, and legal precedent.  The implied threat of reversal as worded in the footnote is not one of those factors properly considered.

(2004).  As the Ninth Circuit Court of Appeals ruled in *Metcalf*, 214 F.3d at 1146 (emphasis added):

> On reflection, and in consideration of our limited role in this process, we have decided that it is appropriate only to require a new EA...under circumstances that ensure an objective evaluation free of the previous taint...the manner of ensuring that the process...is accomplished objectively and in good faith *shall be left to the relevant agencies*.

Here, as discussed above, the Forest Service has abandoned the Clear Creek Project and is currently re-evaluating the changed needs of the Piute region.  The Court affords the Forest Service the ability to engage in its process to assess and address the changed needs, and to propose any further action it deems appropriate.  Judicial intervention at this time would deny the Forest Service the opportunity to apply its expertise in deciding whether, and how, to continue under the contract. *Standard Oil Co.*, 449 U.S. at 242.  Accordingly, judicial intervention would be inappropriate at this time.

For these reasons, this Court finds that Earth Island's pre-enforcement challenge to the suspended timber sale contract is not ripe. *See Earth Island Inst. v. Ruthenbeck*, 490 F.3d at 694-95 (9th Cir. 2006); *Klamath-Siskiyou Wildlands Center v. Bureau of Land Management*, 2005 WL 2622014 (D. Or. 2005).[8]

## CONCLUSION

For the foregoing reasons, this Court DISMISSES Earth Island's complaint and DIRECTS the clerk of this court to close this action.

IT IS SO ORDERED.

**Dated:    November 19, 2008**            /s/ Lawrence J. O'Neill
                                    UNITED STATES DISTRICT JUDGE

---

[8]Based on this conclusion, the Court does not reach the merits of the parties' standing arguments.

15